

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00183-CV

_____

MAVERICK NATURAL RESOURCES, LLC; BREITBURN OPERATING LP; AND BREITBURN OPERATING GP, LLC, Appellants and Appellees

V.

GLENN D. COOPER OIL & GAS, INC. D/B/A COOPER OIL & GAS, INC., Appellee and Appellant

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-324848-21

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

Appellee Glenn D. Cooper Oil & Gas, Inc. (Cooper) sent Appellant Maverick Natural Resources, LLC (Maverick) a letter offering to purchase certain property interests (the Letter), and Maverick signed it. The Letter contemplated a "diligence period" in which Cooper would review Maverick's records, and it stated that Cooper had the "sole discretion" to decide whether "to move forward to a closing."

After the Letter's specified closing date passed, Maverick decided not to sell the property, and Cooper sued Maverick and two related entities (collectively, the Maverick Entities) for breach of contract, declaratory judgment, and statutory fraud. But Maverick, pointing to the Letter's "sole discretion" language, insisted that the Letter was unenforceable for want of consideration. The trial court disagreed, and it entered a series of summary judgments that, among other things, awarded Cooper specific performance of the Letter along with costs and attorney's fees. The Maverick Entities challenge the judgment on five grounds, including the Letter's alleged lack of consideration. Cooper, meanwhile, conditionally cross-appeals from a summary judgment dismissing its statutory fraud claim.

In light of this court's binding, on-point precedent in *Culbertson v. Brodsky*, we must agree with the Maverick Entities that Cooper's "sole discretion" to walk away from the sale made its promise to perform illusory, and absent separate consideration for this option, the Letter was unenforceable. 788 S.W.2d 156, 157–58 (Tex. App.—Fort Worth 1990, writ denied). Accordingly, we will affirm the partial summary

2

judgment entered against Cooper, reverse and render the summary judgments entered against the Maverick Entities, and remand for the trial court's reconsideration of costs and attorney's fees.

## I. Background

In March 2021, Cooper sent Maverick a Letter offering $950,000 "for all right, title, and interest in wells and leases [listed in the Letter and] owned by [Maverick], in Crane County." The Letter stated that (apart from certain rights of first refusal not relevant here) Cooper would "have the exclusive right to purchase these properties until April 15, 2021." The Letter then went on—in the paragraph at the heart of this appeal—to provide caveats:

> This offer is wholly contingent upon a review of all LOS, well files, title records, financial records, interviews with field pumpers, staff, and site inspections of all facilities and leases by [Cooper]. A reasonable diligence time to conduct interviews, inspect the files and leases will be required. Should [Cooper], in its sole discretion, desire to move forward to a closing, no financing contingencies shall be had, and closing will occur promptly. Should [Cooper] discover anything during its diligence period it determines unacceptable, no closing or exchange of funds shall occur. Closing shall occur on or before April 15, 2021.

Maverick's vice president signed the Letter to indicate that it was "[a]greed and accepted."

On April 15, 2021—the Letter's date for closing—the parties were still negotiating terms and exchanging redlined drafts of the assignment and bill of sale. No closing occurred on that date, and within a week, Maverick decided not to sell the property to Cooper.

3

Cooper sued Maverick and two of its subsidiaries (Appellants Breitburn Operating LP and Breitburn Operating GP, LLC[1]) for breach of contract, declaratory judgment, and statutory fraud—all related to the Letter. Cooper alleged that the Maverick Entities had breached the Letter by refusing to sell the property, it sought a declaratory judgment that the Letter was a valid and enforceable contract, and it contended that Maverick had defrauded Cooper by holding the property out as its own when the property belonged to Breitburn Operating LP (for which Breitburn Operating GP, LLC served as general partner). The Maverick Entities responded by arguing that the Letter lacked consideration and that, regardless, Breitburn Operating LP and Breitburn Operating GP, LLC were not parties to it.

Following a barrage of competing summary judgment motions, the trial court (1) denied the Maverick Entities' motions for traditional summary judgment based on, among other things, the lack of consideration; (2) granted Cooper's motions for partial traditional summary judgment on its declaratory judgment and breach of contract claims; (3) granted Cooper's motion for partial no-evidence summary judgment on the Maverick Entities' statute of frauds defense; and (4) granted the Maverick Entities' motion for partial no-evidence summary judgment on Cooper's

---

[1]Some of the Maverick Entities' filings indicate that, in 2018, Breitburn Operating GP, LLC changed its name to Maverick Operating GP, LLC. Nonetheless, Cooper named Breitburn Operating GP, LLC as a defendant; the trial court entered judgment against that entity; the parties continue to use that name; and neither Cooper nor the Maverick Entities have asked us to modify the style of this appeal.

statutory fraud claim. The court ordered specific performance of the Letter and awarded Cooper costs and attorney's fees for its declaratory judgment claim.

## II. Discussion

The Maverick Entities raise what we construe as five appellate issues: (1) whether the Letter was unenforceable for want of consideration; (2) whether, if enforceable, the Letter required closing by April 15; (3) whether Cooper could obtain a no-evidence summary judgment on the statute of frauds defense; (4) whether Cooper could recover attorney's fees for its declaratory judgment claim; and (5) whether the amount of fees awarded was supported by the evidence. Cooper, in turn, conditionally cross-appeals the no-evidence summary judgment dismissing its statutory fraud claim.

Just one of these issues disposes of them all: the Letter's enforceability.

### A. We review the summary judgments de novo.

We review a trial court's summary judgment orders de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When the parties have filed competing summary judgment motions on a given element or claim and the trial court grants one motion and denies the other, we review all questions presented, and each party bears the burden of proving its entitlement to judgment as a matter of law. *Devon Energy Prod. Co., v. Sheppard*, 668 S.W.3d 332, 342–43 (Tex. 2023); *Mann Frankfort Stein & Lipp Advisors*, 289 S.W.3d at 848. And when, as here, the summary judgment turns on a matter of contract interpretation, that too presents a

5

question of law subject to de novo review. *Devon Energy Prod. Co.*, 668 S.W.3d at 343; *LCP Hurst Precinct Line, LLC v. Tex. Taco Cabana, L.P.*, No. 02-23-00012-CV, 2024 WL 2200202, at *6 (Tex. App.—Fort Worth May 16, 2024, no pet. h.) (mem. op.).

## B. The Letter was unenforceable.

All of Cooper's claims—for declaratory judgment, breach of contract, and statutory fraud—are premised on the Letter's enforceability. And the Maverick Entities contend, as they did in several of their summary judgment motions, that the Letter was unenforceable due to a lack of consideration.

### 1. Absent consideration, a contract is unenforceable.

For a contract to be enforceable, it must be supported by valid consideration, i.e., mutuality of obligation. *Doskocil Mfg. Co., Inc. v. Nguyen*, No. 02-16-00382-CV, 2017 WL 2806322, at *6 (Tex. App.—Fort Worth June 29, 2017, no pet.); *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 224 (Tex. App.—Fort Worth 2009, pet. denied); *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 725 (Tex. App.—Fort Worth 2008, pet. dism'd); *Longfellow v. Racetrac Petroleum, Inc.*, No. 2-06-124-CV, 2008 WL 2404233, at *4 (Tex. App.—Fort Worth June 12, 2008, pet. denied) (per curiam) (mem. op.). Consideration refers to something that is a benefit to the promisor or a loss or detriment to the promisee. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991); *Longfellow*, 2008 WL 2404233, at *4. Although a promise to perform may constitute consideration, if the promisor retains the option to terminate the transaction in lieu of performing it, then the promise is illusory and

6

does not actually bind the promisor. *City of The Colony*, 272 S.W.3d at 725. Consequently, if one party retains the option to walk away for a specified period of time (as is common in residential real estate contracts, for example), then that party must provide separate consideration for the option. *1464-Eight, Ltd. v. Joppich*, 154 S.W.3d 101, 105 (Tex. 2004); *see Culbertson*, 788 S.W.2d at 157 ("An option contract requires consideration for both the option and the underlying contract."). Otherwise, the freedom to walk away without consequence renders the promise to perform illusory, undermining the contract as a whole. *See Maharishi Sch. of Vedic Sci. v. Olympus Real Estate Corp.*, No. 05-01-00140-CV, 2002 WL 1263894, at *1 (Tex. App.—Dallas June 7, 2002, pet. denied) (not designated for publication) ("A promise that is illusory, and therefore fails to bind the promisor, who retains the option of discontinuing performance, does not support a contract.").

### 2. The Letter lacked consideration and was therefore unenforceable.

It is undisputed that, when the Letter was signed, the commitments in the Letter were the sole form of consideration exchanged; no money was paid.[2] But the parties dispute whether Cooper's promise to perform was valid consideration. Maverick contends that it was illusory because the Letter gave Cooper unlimited "sole discretion" to decide whether to proceed to closing, while Cooper insists that its

---

[2]Cooper separately argues that, if its promise to perform was illusory, it subsequently supplied the missing consideration by communicating its willingness to proceed to closing. *See infra* note 3.

7

promise to perform was valid consideration because Cooper's "sole discretion" was contingent upon its discovery of "unacceptable" information during its diligence review and carried an implied duty to act in good faith.

### a. Contract construction focuses on the plain language.

In construing the Letter, we seek to give effect to the parties' intent as that intent is expressed in the written agreement. *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 257 (Tex. 2023); *see U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*, 681 S.W.3d 383, 387 (Tex. 2023). "The most important consideration . . . is the agreement's plain, grammatical language." *Endeavor Energy Res., L.P. v. Energen Res. Corp.*, 615 S.W.3d 144, 148 (Tex. 2020). "[A]ll the usual 'rules of construction' apply, like the familiar presumptions favoring consistent usage, disfavoring surplusage, . . . using the plain meaning of undefined terms," and construing the contract as a whole. *Mosaic Baybrook One*, 674 S.W.3d at 257 (quoting *Perthuis v. Baylor Miraca Genetics Labs., LLC*, 645 S.W.3d 228, 236 (Tex. 2022)). We may not rewrite the contract or add to its language "simply because one of the parties dislikes its provisions or wishes that it provided for something that it does not." *LCP Hurst Precinct Line*, 2024 WL 2200202, at *6–7.

### b. Cooper's "sole discretion" was not contingent upon its diligence review.

We begin with "[t]he most important consideration," *see Endeavor Energy Res.*, 615 S.W.3d at 148–49—the Letter's plain language:

A reasonable diligence time . . . will be required. Should [Cooper], in its sole discretion, desire to move forward to a closing, no financing contingencies shall be had, and closing will occur promptly. Should [Cooper] discover anything during its diligence period it determines unacceptable, no closing or exchange of funds shall occur.

Cooper emphasizes that the "sole discretion" provision was sandwiched within the Letter's contemplation of a diligence review, and it maintains that such positioning made Cooper's "discretion" contingent upon its "discover[y of] anything . . . unacceptable" during its diligence period. But we cannot rely on the proximity of contractual terms to add conditions to the plain language of the contract or to render portions of it meaningless. *See Devon Energy Prod. Co.*, 668 S.W.3d at 343, 347 (stating that "[i]n keeping with our commitment to freedom of contract," courts "will not rewrite the [contracts] to 'add to or subtract from [their] language' or to 'interpolate constraints' not found in the unambiguous language" and "should avoid rendering contract language meaningless"); *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019) ("[W]e must consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." (internal quotation marks removed)); *LCP Hurst Precinct Line*, 2024 WL 2200202, at *6 ("In construing a contract, we may neither rewrite it nor add to its language."). Nothing in the text of the Letter conditions Cooper's "sole discretion" on the information it discovers during its diligence period or on anything else. In fact, were we to construe the Letter to imply such a limitation, then not only would we be writing new language into the agreement, but by doing so,

9

we would render meaningless the "sole discretion" provision by making it surplusage, duplicative of the sentence that follows—that "no closing . . . shall occur" if Cooper "discover[s] anything during its diligence period [that] it determines unacceptable." *See Maharishi Sch. of Vedic Sci.*, 2002 WL 1263894, at \*2–3 (treating provision conditioning closing on buyer's "sole and absolute discretion" as distinct from provision in same sentence conditioning closing on seller's compliance with certain conditions). This we cannot do. *See Devon Energy Prod. Co.*, 668 S.W.3d at 343, 347.

The plain, unambiguous language of the Letter states that closing will not proceed if (1) Cooper discovers "anything . . . unacceptable" during its diligence period; or (2) Cooper exercises its "sole discretion" not to "move forward to a closing." Despite the two clauses' close proximity, they are distinct.

### b. Absent consideration for Cooper's "sole discretion," *Culbertson* requires reversal.

Faced with a contractual provision that authorized Cooper to walk away in its "sole discretion," and without a textual limitation on that "discretion," we are bound by precedent to construe the Letter as an unenforceable option contract.

In *Culbertson v. Brodsky*, a panel of this court held that, when a party retained the "sole discretion" to walk away and failed to provide separate, valid consideration for this option, the lack of consideration rendered the contract unenforceable. 788 S.W.2d at 157–58. There, the parties entered into a real estate contract, and the buyer deposited a $5,000 check with the title company as consideration for his "sole

10

discretion" to walk away for 60 days. *Id.* at 156–57. But because the title company was required to return the check to the buyer upon demand and was forbidden from cashing the check until the 60-day period had expired, the buyer could effectively walk away without consequence. *Id.* at 157. Pointing this out, we held that the check was not valid consideration for the buyer's option period. *Id.* And absent consideration for the buyer's "total discretion to avoid the sale," such discretion undermined the enforceability of the contract as a whole. *Id.* at 157–58; *see Maharishi Sch. Of Vedic Sci.*, 2002 WL 1263894, at *2–3 (holding that contract that conditioned closing upon Seller's compliance with certain conditions "and provided Purchaser (in its sole and absolute discretion) elects to proceed to closing" lacked consideration because purchaser could "close the sale or not close for any reason or no reason at all"); *Baldwin v. New*, 736 S.W.2d 148, 150 (Tex. App.—Dallas 1987, writ denied) (holding that proposal was not enforceable contract because it "provided that the buyer was to have sixty days to examine the property and obtain engineering studies[, and a]t the end of the sixty days, the buyer could, in his sole discretion, decide not to buy the property" while "[t]he seller would have no remedy at all against him" (emphasis removed)).

The same rule applies here. Because the Letter gave Cooper the "sole discretion" to proceed to closing or not, Cooper was required to pay separate

11

consideration for this option.  *See Culbertson*, 788 S.W.2d at 157–58.  And it is undisputed that no separate consideration was provided.[3]

Cooper argues, though, that the Letter was not an option contract because the "sole discretion" provision included an implied duty to act in good faith that prevented the promise to perform from being illusory.  *See Shoe-Bar Ranch, Inc. v. Preferred Proppants, LLC*, No. MO:17-CV-00210-DC, 2018 WL 8244907, at *8 (W.D. Tex. Mar. 20, 2018) (order) (noting "differences between satisfaction clauses and option agreements and noted that a satisfaction clause impliedly obligates the bound party to use due diligence whereas options provide a true 'free look' [option] period").  It points to a series of cases from other jurisdictions in which the courts have rejected illusoriness arguments by implying good-faith requirements when contractual

---

[3]Cooper argues that even if its "sole discretion" to walk away made its promise to perform illusory, it subsequently supplied the missing consideration when it communicated its willingness to proceed to closing because "even if an illusory promise renders a contract unilateral, consideration can still be established by part performance by the promisee." *See Frequent Flyer Depot*, 281 S.W.3d at 224–25 (noting that, even if airline's ability to terminate frequent-flyer program rendered consideration for user agreement illusory, airline performed by issuing tickets in exchange for rewards points pursuant to that program).  But Cooper has not identified anything in its communications that bound it to proceed to closing. Although its communications may have expressed a desire or intention to proceed, it still retained the "sole discretion" to walk away, and had it decided to do so, it would not have incurred a loss and Maverick could not have sought enforcement. *Cf. Longfellow*, 2008 WL 2404233, at *2–5 (holding that partial performance supplied separate consideration when purchaser paid earnest money for option contract, spent significant sums for work on property, retained a title company, and sent letters committing to purchase property upon resolution of specific issues, but seller refused to close); *Maharishi*, 2002 WL 1263894, at *2–3 (noting lack of consideration for amendment that provided buyer with discretion to walk away).

12

provisions condition performance on one party's satisfaction.[4]   Cooper urges us to imply a similar good-faith requirement into the Letter here.

But we rejected this "good[-]faith argument" in *Culbertson*, noting that "personal satisfaction can form the basis of an enforceable contract under proper conditions," but emphasizing the unfettered nature of a party's "sole discretion."[5]   *See* 788 S.W.2d

---

[4]*See, e.g.*, *EM Bldg. Contractors Servs., LLC v. Byrd Bldg. Servs., LLC*, No. 05-19-00153-CV, 2020 WL 4592791, at *11 (Tex. App.—Dallas Aug. 11, 2020, no pet.) (mem. op.) (rejecting illusoriness argument and implying good-faith limitation when agreement with subcontractor required subcontractor to carry insurance "acceptable to [one party]"); *Young v. Neatherlin*, 102 S.W.3d 415, 419–20 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (rejecting illusoriness argument as waived and giving alternate basis for holding in dicta by stating that, "[w]hen . . . performance is conditioned on one party's judgment or determination, courts imply a requirement that such judgment is exercised in good faith"); *Rhodessa Dev. Co. v. Simpson*, 658 S.W.2d 218, 219–21 (Tex. App.—El Paso 1983, no writ) (concluding that contract conditioned on zoning change "must be construed to place an implied obligation upon the buyer to use due diligence to obtain such zoning change" and explaining that, "[o]therwise, the buyer [would have] the added option to sit idly by if it determines that the contract is not advantageous and, when the zoning never occurs, consider the contract terminated without suffering any damages"); *see also Shoe-Bar Ranch*, 2018 WL 8244907, at *7 (distinguishing between cases in which "one party had the right to determine, in its discretion, whether a contingency was met," and cases in which party's "exercise of discretion was not dependent on a satisfied contingency," and holding that contract provision at issue fit in former category so contract was enforceable).

[5]Although *Culbertson* did not provide an in-depth analysis of the good-faith issue, its interpretation is consistent with the plain meaning of the term "sole discretion."   A matter of "discretion" is left to the actor's "individual choice," "judgment[,] or pleasure."   *Discretion*, Webster's Third New International Dictionary 647 (reprt. 2021) (1961) (defining "discretion" as "power of decision" or "individual judgment"; and further defining "at discretion" as "according to one's judgment or pleasure" or "at will"); *Discretion*, Merriam-Webster, https://www.merriam-webster.com/dictionary/discretion (last visited June 10, 2024) (defining "discretion" as "individual choice or judgment").

at 157 (distinguishing appellee's case law, which involved "a promise conditioned on personal satisfaction" and a contract that "implied [an] obligation on the buyer's part to use due diligence"). We have not reconsidered *Culbertson* en banc, nor has the Texas Supreme Court weighed in. And "three-judge panels must follow materially indistinguishable decisions of earlier panels of the same court unless a higher authority has superseded that prior decision." *Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022) (noting that such rule—"[h]orizontal *stare decisis*"—addresses "the respect that [a] [c]ourt owes to its own precedents"); *see Blanton v. Red Desert Enters., LLC*, No. 02-23-00191-CV, 2024 WL 1925140, at *7 (Tex. App.—Fort Worth May 2, 2024, no pet. h.) (mem. op.) ("[W]e are not free to disregard decisions of our court unless they have been superseded by the supreme court, an en banc decision of the court of appeals itself, or an applicable legislative or constitutional provision."). We are not at liberty to ignore *Culbertson*, and neither was the trial court.[6]

Thus, bound by *Culbertson* and the plain language of the Letter, we can reach only one conclusion: because Cooper retained the "sole discretion" to walk away, and because this option was not supported by separate consideration, Cooper's promise to perform was illusory and the Letter unenforceable. *See Culbertson*, 788 S.W.2d at 157–58. The trial court erred by rendering a declaratory judgment to the contrary and by

---

[6]The Maverick Entities cited, discussed, and heavily relied upon *Culbertson* in the trial court.

awarding specific performance on Cooper's claim for breach of the Letter. We sustain the Maverick Entities' dispositive first issue.

## C. The Letter's unenforceability resolves the remaining issues.

The Letter's unenforceability resolves not only the Maverick Entities' other issues but also Cooper's conditional cross-appeal.

First, the Letter's unenforceability renders moot the Maverick Entities' contentions that there is no evidence of breach and that the trial court erred by granting a no-evidence summary judgment on the statute of frauds defense. We need not address those issues. *See* Tex. R. App. P. 47.1.

Second, given our reversal of Cooper's declaratory judgment claim, the equities have changed, so the "equitable and just" costs and attorney's fees awarded to Cooper for that claim require reconsideration. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (authorizing trial court in declaratory judgment proceeding to "award costs and reasonable and necessary attorney's fees as are equitable and just"); *see Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 455 (Tex. 2015) (noting that reversal of declaratory judgment does not always require reversal of fees but approving lower court's remand of fees due to change in outcome on primary issues); *Savannah Court P'ship v. Strait*, No. 02-23-00200-CV, 2024 WL 482227, at *9 (Tex. App.—Fort Worth Feb. 8, 2024, no pet.) (mem. op.) (remanding for reconsideration of attorney's fees when declaratory judgment claim was reversed on appeal as "the equities underlying the trial

court's determination of attorney's fees ha[d] changed"). The Maverick Entities' challenges to the fee award are thus also moot.

As for Cooper's cross-appeal of the summary judgment on its statutory fraud claim, that claim was premised on Cooper's contention that Maverick induced Cooper "to enter into a contract," with the "contract" being the Letter. Tex. Bus. & Com. Code Ann. § 27.01(a)(1)(A), (a)(2)(C). Consequently, the Letter's unenforceability guts the statutory fraud claim as well, and we uphold the trial court's summary judgment on that basis. *See Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005) (recognizing that, when trial court does not specify basis for its summary judgment, "we may affirm . . . if any of the theories presented to the trial court and preserved for appellate review are meritorious").

### III. Conclusion

Because the Letter is unenforceable for want of consideration, we affirm the trial court's judgment on Cooper's statutory fraud claim, we reverse the trial court's judgment on Cooper's breach of contract and declaratory judgment claims, and we render judgment that Cooper take nothing on the contract and declaratory judgment claims. *See* Tex. R. App. P. 43.2(a), (c). We remand the award of "equitable and just" costs and attorney's fees for the trial court's reconsideration. Tex. Civ. Prac. & Rem. Code Ann. § 37.009; *see* Tex. R. App. P. 43.2(d).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: June 13, 2024